# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

**UNITED STATES OF AMERICA**
       **Plaintiff,**

  v.                                                          **Case No. 07-CR-2**

**STEVEN JAGEMANN**
       **Defendant.**

## SENTENCING MEMORANDUM

The government charged defendant Steven Jagemann with attempted possession of cocaine with intent to distribute. 21 U.S.C. §§ 841(a)(1) & (b)(1)(C). Defendant pleaded guilty to the offense, and the probation office prepared a pre-sentence report ("PSR") in anticipation of sentencing. The PSR set defendant's offense level at 12 (base level 16, U.S.S.G. § 2D1.1(c)(12), minus 2 under the safety valve provision, § 2D1.1(b)(9), and minus 2 for acceptance of responsibility, § 3E1.1) and his criminal history category at I, producing an imprisonment range of 10-16 months under the advisory sentencing guidelines.

The government advocated a sentence at the low end of the range and did not oppose splitting that sentence into ½ prison and ½ home confinement, as U.S.S.G. § 5C1.1(d) permits. Defendant requested a non-guideline sentence of probation. Under all of the circumstances, I found a sentence of three years probation with six months of home detention sufficient but not greater than necessary to satisfy the purposes of sentencing.

## I. FACTS

This unusual case commenced when a cooperating informant ("CI") in an unrelated drug investigation advised his FBI handlers that he had been selling cocaine to his dentist, the

defendant, Dr. Steven Jagemann. Through recorded phone calls, the CI arranged a seven gram sale. Then, working with the FBI, the CI met with defendant Jagemann and provided seven grams of fake cocaine in exchange for $400. Defendant was arrested shortly thereafter with the fake cocaine.

In a post-arrest statement, defendant acknowledged regularly buying small amounts of cocaine from the CI over the past year. Defendant explained that he re-sold the cocaine to a friend named Neil. The parties agreed that the total amount involved in these transactions was 50-100 grams of cocaine.

## II. DISCUSSION

### A. Sentencing Procedure

In imposing sentence, I first calculate the advisory sentencing guideline range, then select a sentence that is sufficient but not greater than necessary given all of the factors set forth in 18 U.S.C. § 3553(a). See, e.g., United States v. Harris, No. 05-4259, 2007 U.S. App. LEXIS 14012, at *9 (7th Cir. June 15, 2007) ("When sentencing a defendant, a district court must consider all sentencing factors enumerated in 18 U.S.C. § 3553(a)."); United States v. Holt, 486 F.3d 997, 1004 (7th Cir. 2007) ("Post-Booker a district court must engage in a two-part sentencing procedure: (1) properly calculate the guidelines sentence; and (2) consider the sentencing factors set forth in 18 U.S.C. § 3553(a) to arrive at a [sufficient] sentence."). In the present case, neither side objected to the PSR's guideline calculations, which I found correct and accordingly adopted.

I proceeded then to consideration of the § 3553(a) factors, which include:

(1) the nature and circumstances of the offense and the history and characteristics of the defendant;

2

> (2) the need for the sentence imposed–
>
> (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>
> (B) to afford adequate deterrence to criminal conduct;
>
> (C) to protect the public from further crimes of the defendant; and
>
> (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;
>
> (3) the kinds of sentences available;
>
> (4) the advisory guideline range;
>
> (5) any pertinent policy statements issued by the Sentencing Commission;
>
> (6) the need to avoid unwarranted sentence disparities; and
>
> (7) the need to provide restitution to any victims of the offense.

18 U.S.C. § 3553(a).

The statute directs the court, after considering these factors, to impose a sentence that is sufficient but not greater than necessary to satisfy the purposes of sentencing – just punishment, deterrence, protection of the public and rehabilitation of the defendant. The guidelines do not enjoy special favor in making this determination.

> The judge is not required – or indeed permitted – to "presume" that a sentence within the guidelines range is the correct sentence and if he wants to depart give a reason why it's not correct. All he has to do is consider the guidelines and make sure that the sentence he gives is within the statutory range and consistent with the sentencing factors listed in 18 U.S.C. § 3553(a). His choice of sentence, whether inside or outside the guideline range, is discretionary and subject therefore to only light appellate review. The applicable guideline nudges him toward the sentencing range, but his freedom to impose a reasonable sentence outside the range is unfettered.

United States v. Demaree, 459 F.3d 791, 794-95 (7th Cir. 2006) (citations omitted); see also Rita v. United States, 127 S. Ct. 2456, 2465 (2007) (stating that "the sentencing court does not

3

enjoy the benefit of a legal presumption that the Guidelines sentence should apply").

**B.    Analysis**

As noted above, this case involved defendant obtaining cocaine from a cooperating informant, which he then resold to a friend. The parties estimated a total amount of 50-100 grams under the relevant conduct provision of the guidelines, U.S.S.G. § 1B1.3(a)(2), and the specific count of conviction involved a controlled purchase of seven grams.

I found defendant's conduct puzzling given his background. He was fifty-two years old and had worked as a dentist for twenty-seven years. He had a good childhood, performed quite well academically both in high school and dental school, then established a successful practice. Defendant admitted some casual use of marijuana but denied use of cocaine. Given defendant's professional success and his lack of any serious drug problems, it was difficult to understand why he committed this crime. Perhaps the best explanation was the one offered by his counsel – defendant, a middle aged man going through a divorce, simply engaged in some disastrous risk-taking behavior.

Defendant's personal life seemed more stable since his commission of the crime. He was married to his first wife for thirty years before divorcing her in 2005, around the same time he engaged in cocaine distribution. However, he re-married in October 2006, and his current wife made positive comments to the PSR writer. She indicated that defendant was an excellent step-father to her three children, who would be devastated if he was sent to prison, and planned to adopt the youngest. She also stated that they would have to hire another dentist to manage the practice if defendant were imprisoned. Finally, she stated that he no longer used marijuana, and all of defendant's screens on pre-trial release were negative, confirming her assertion.

4

Defendant previously had some minor brushes with the law – a municipal citation arising out of a fight with a patient in 1993 and a 2003 conviction for disorderly conduct. The latter conviction, which had been amended from possession of a controlled substance, arose out of a search warrant executed at defendant's home, pursuant to which officers found marijuana. Defendant had also been reprimanded by state licensing authorities for practicing with an expired dental license. However, despite these problems, defendant seemed to be on the right track with the help of his current wife.

The guidelines recommended a prison term of 10-16 months, a range falling within Zone C of the Grid and allowing a split sentence of ½ prison and ½ home confinement. Under all of the circumstances, while I concluded that some form of confinement was needed to provide punishment and deterrence, I did not believe that prison was necessary to satisfy the purposes of sentencing.

First, there was no indication that defendant was a large scale dealer or had a regular customer base; it appeared that he simply resold the small amounts of cocaine he obtained from a single supplier to a single friend. This mitigated the seriousness of the crime somewhat. See 18 U.S.C. § 3553(a)(2)(A).

Second, I found it appropriate to recognize the significant positives in defendant's character, including his lengthy employment record and service to patients, and his family situation. Defendant's dental practice and his family (including his ex-wife, to whom he paid alimony) depended on defendant, and a prison sentence would harm them without adding significantly to punishment or deterrence. See §§ 3553(a)(1) and (a)(2)(A) & (B).

Third, defendant faced significant collateral consequences based on his conviction, including the possible suspension of his license by state authorities and his prescription-writing

5

privileges by the DEA. This added to both the punitiveness and the deterrent effect of the felony conviction, in a manner not faced by a defendant who did not hold such licenses. See §§ 3553(a)(2)(A) & (a)(2)(B).

Finally, I saw no indication that defendant presented a danger from which the public had to be protected. Based on his character and background, this conduct appeared to be aberrational. His sporadic drug use seemed to be behind him, and I saw no further correctional treatment needs. See § 3553(a)(2)(D). A lengthy period of supervision in the community would ensure that defendant was monitored for any future violations of the law and did not return to drug use. See § 3553(a)(2)(C).

### III. CONCLUSION

Therefore, I placed defendant on probation for a period of three years, with a condition that he serve six months of home confinement on electronic monitoring. This period of confinement was, under all the circumstances, sufficient to satisfy the need for punishment and deterrence. Because the sentence varied from the guideline range by only 2 levels and was based on the particular facts of the case, it did not create unwarranted disparity.[1] See §

---

[1] As I indicated during the sentencing hearing, it is important to treat offenders from all social strata equally, and this sentence should not in any way be interpreted as the product of a "middle-class white discount." It could perhaps be argued that defendant was treated worse because of his atypical profile. Drug cases of this small size do not usually end up in federal court. I suspect that in state court defendant would have received a sentence of probation with some work-release time as a condition. If Huber time had been available to me, I would have strongly considered such a sentence. While different sovereigns can craft their own responses to crime, and I am generally skeptical of the propriety of such comparisons under § 3553(a)(6), see United States v. Wachowiak, 412 F. Supp. 2d 958, 964-65 (E.D. Wis. 2006), aff'd, No. 06-1643, 2007 U.S. App. LEXIS 18234 (7th Cir. Aug. 1, 2007), in this case it was important to recognize that defendant's atypical federal drug offender profile may have helped and hurt him. Ultimately, I found speculation as to how the case ended up in federal court unhelpful and based the sentence on the specific, individual factors discussed above.

6

3553(a)(6). As further conditions of probation, I ordered defendant to undergo drug testing and treatment, and pay a $1000 fine. Other terms and conditions of the sentence appear in the judgment.

Dated at Milwaukee, Wisconsin, this 8th day of August, 2007.

/s Lynn Adelman
_____
LYNN ADELMAN
District Judge